# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 04-1748

_____

|  |  |  |
|---|---|---|
| Citizens Legal Environmental Action Network, Inc., | * | |
| | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| United States of America, | * | |
| | * | |
| Intervenor, | * | |
| | * | |
| v. | * | |
| | * | |
| Premium Standard Farms, Inc., | * | Appeal from the United States |
| | * | District Court for the Western |
| Defendant-Appellee, | * | District of Missouri. |
| | * | |
| Carol Browner, Administrator, United States Environmental Protection Agency, in her official capacity, Dennis Grams, Region VII Administrator of the United States Environmental Protection Agency, in his official capacity, Environmental Protection Agency, of the United States of America, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

Citizens Legal Environmental Action       *
Network, Inc.,                            *
                                          *
          Plaintiff-Appellant,            *
                                          *
     v.                                   *
                                          *
Continental Grain Company,                *
                                          *
          Defendant-Appellee.             *

_____

Submitted: December 15, 2004
Filed:  February 1, 2005

_____

Before MELLOY, BRIGHT, and BOWMAN, Circuit Judges.

_____

BRIGHT, Circuit Judge.

Appellant, Citizens Legal Environmental Action Network, Inc. ("CLEAN"), appeals from the district court's denial of certain attorney fees. In the underlying actions, begun in 1997, CLEAN sued appellees Premium Standard Farms ("Premium") and Continental Grain Company ("Continental") for violations of various federal environmental laws. The case was settled in 2001, and the district court determined that CLEAN prevailed and could collect attorney fees under 33 U.S.C. § 1365(d) and other fee-collecting statutes. We affirm on the basis of the district court's memorandum and order.[1]

_____

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri. The district court's order was entered on September 10, 2003, in cases 97-6073-CV-SJ-HFS and 98-6099-CV-SJ-HFS.

## I.

From the inception of the actions until August 2000, CLEAN was represented by the law firm of Armstrong Teasdale ("Armstrong"), with its partner Charles Speer as lead attorney for CLEAN. In August 2000, Speer resigned from Armstrong and joined the law firm of Payne and Jones, Chartered. CLEAN discharged Armstrong and hired the Payne firm as counsel in the underlying actions, again with Speer as lead attorney.

Before the settlement was reached in May 2001, and while the parties were negotiating, Armstrong, without CLEAN's knowledge, directly negotiated with Premium and Continental and came to an agreement by which Premium and Continental paid a discounted amount of Armstrong's fees for work on the underlying actions. By this agreement, Armstrong assigned back to Premium and Continental any additional money Armstrong might receive out of an award of attorney fees to CLEAN. (Thus, if CLEAN were awarded fees for Armstrong's work, Premium and Continental would pay the fees to CLEAN, CLEAN would presumably be required to pay them to Armstrong, and Armstrong would give the money back to Premium and Continental.) CLEAN learned of the proposed fee agreement and protested it.

Following the settlement of its action against Premium and Continental, CLEAN requested that the district court award fees for Armstrong's work. CLEAN sought approximately $7 million in attorney fees, in total – including about $5.9 million for Armstrong's work. Armstrong had already accepted $1.7 million directly from Premium and Continental in full satisfaction of any fees owed to it.

CLEAN argued to the district court, as it argues on appeal, that Armstrong's agreement with Premium and Continental was of no effect. CLEAN argued, additionally, that by the terms of its retainer agreement with Armstrong, CLEAN was

entitled to keep any attorney fees awarded for Armstrong's work, and CLEAN evinced an intention to keep the money.

The district court denied any award of additional fees to CLEAN for Armstrong's work. CLEAN appeals the denial of $5.9 million in fees for Armstrong's work.

## II.

An award of attorney fees pursuant to the federal fee-shifting statutes is not automatic but rather is subject to the district court's discretion. *See, e.g.,* 33 U.S.C. § 1365(d) ("[t]he court . . . may award . . . whenever the court determines such award is appropriate"). We review the district court's grant or denial of attorney fees for abuse of that discretion. *Hayes v. Faulkner County, Ark.*, 388 F.3d 669, 676 (8th Cir. 2004). When necessary, however, we may review *de novo* legal conclusions that inform the court's exercise of its discretion. *See Lewis v. Anderson*, 692 F.2d 1267, 1269 (9th Cir. 1982).

CLEAN devotes its lengthy briefs almost entirely to questions of law that are not dispositive. The crux of the matter for the district court was that CLEAN sought payment of attorney fees but intended to keep the money for itself, rather than using it to pay the attorneys who earned the fees and who had declared themselves satisfied with the fees already received. Fundamentally, the district court denied the attorney fees in question because, "if plaintiff [CLEAN] is not committed to paying Armstrong the full recovery made for Armstrong's services, it is not equitably or appropriately entitled to a full assessment of the fees it claims, even though they would otherwise be classified as 'reasonable.'"[2] Appellant's App. at A11-A12. The district court's

---

[2]While we find CLEAN's reading of the retainer agreement – which CLEAN claims entitles it to keep any fees awarded for Armstrong's work – wholly

decision rested on equitable considerations, the judgment of which lies within the court's sound discretion.

CLEAN says nothing to throw in doubt the district court's judgment of what is equitable and appropriate in this matter. CLEAN does argue that Armstrong's direct agreement with Premium and Continental deprived CLEAN of a bargaining chip that might have been used to negotiate a better settlement with Premium and Continental. The Supreme Court has held that a prevailing party controls negotiations for attorney fees and has the power and discretion to use such fees as a bargaining chip in settlement negotiations – to the extent of bargaining away such fees altogether. *Evans v. Jeff D.*, 475 U.S. 717, 731-32 (1986). Control of fee negotiations thus is valuable to a prevailing party, and loss of control harms a party that seeks to use it to get a better deal in a settlement.[3] The loss of control, however, has no practical consequence – and negligible equitable significance – if the prevailing party is not in fact inclined to use control of fee negotiations to bargain for a better settlement.

---

unconvincing, this does not render CLEAN's claim of entitlement unimportant. Clearly, if such fees were awarded, CLEAN would at least force Armstrong to sue in order to receive the fees it had earned. CLEAN's position thus is properly considered by the district court as affecting the balance of equities relevant to an attorney fee award. Additionally, if Armstrong's assignment of any additional fee recovery to Premium and Continental is valid (an issue we do not decide), Armstrong could not recover the fee award – thus either giving CLEAN a windfall in the form of money for attorney fees that is never paid over to the attorneys or rendering the fee award an empty gesture.

[3]Control of negotiations for fees does not imply that the prevailing party is entitled to keep whatever fees are recovered instead of paying the money to the attorney who earned it. *See Image Technical Svc., Inc. v. Eastman Kodak Co.*, 136 F.3d 1354, 1359 (9th Cir. 1998).

If CLEAN had been substantially prejudiced in settlement negotiations by Armstrong's separate peace with Premium and Continental, and the district court had not considered such prejudice, the court's decision would give us pause. But that is not the case. The district court did consider whether CLEAN had been prejudiced, deeming this the most important question, and noted, "No actual prejudice is asserted here." *See* Appellant's App. at A13 n.4. On appeal, Premium and Continental declare

> [A]t no time during the negotiations did CLEAN ever seek to use its claim for Armstrong's fees as a bargaining chip to obtain greater relief[,] [l]ikewise, [with the Payne & Jones fees] . . . . In fact, CLEAN refused to even disclose the amount of fees incurred by Payne & Jones, causing settlement negotiations to stall. Without information about the amount of fees incurred, there could be no negotiated resolution of the fee claim.
>
> Had CLEAN really been interested in bargaining away its attorney fee claim in exchange for other relief, surely CLEAN would have indicated some willingness to compromise this claim at some point during the more than two years of settlement negotiations that resulted in the Consent Decree. But CLEAN never even hinted during settlement negotiations that it was interested in waiving its fee claim.

Appellees' Br. at 49-50. CLEAN makes no answer to these statements by the district court and by Premium and Continental, except to state generally that its bargaining power was reduced by Armstrong's agreement with Premium and Continental.

CLEAN has said nothing to call into question the court's judgment of what is equitable and appropriate in this matter. CLEAN settled the underlying actions in a manner favorable to it, and did so, so far as the record shows, without suffering prejudice from Armstrong's direct agreement with Premium and Continental as to fees. CLEAN thus suffered no harm in settlement negotiations for which it could now seek redress. The fees CLEAN seeks would, if awarded, either be retained by CLEAN as a windfall or be forwarded to Armstrong, which has declared itself satisfied with the fees it has already received, or (if the assignment of additional fees

that Armstrong agreed to is valid) be returned to Premium and Continental. There is, then, no potential recipient with a strong equitable interest in the fee award that is sought.

Additionally, in the trial court's view, Armstrong's separate agreement as to fees bore no equitable taint. Armstrong had done the great bulk of the work for CLEAN. CLEAN's lead counsel, Speer, had left Armstrong partly over disagreements involving this very case. Given these unique circumstances, the district court took note of the possibility of bad faith negotiation by CLEAN as to fees for Armstrong's work. In the court's view, therefore, Armstrong's separate agreement reasonably addressed this possibility and gave no reason to award fees to CLEAN for Armstrong's work. We agree.

Judge Sachs, an able and experienced district judge, thoughtfully and properly balanced the equities presented by this novel case and concluded that it was not equitable and appropriate to award CLEAN fees for Armstrong's work.

Accordingly, we affirm.

_____